IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA FLETCHER, JOAN LOVELL, and KATHY WISNIEWSKI, et al., | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) No. 05 C 2695 ) ) |
| ZLB BEHRING LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Gloria Fletcher, Joan Lovell, and Kathy Wisniewski, on behalf of themselves and other unnamed Plaintiffs (collectively "Plaintiffs"), bring this four-count putative class action First Amended Complaint alleging two claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* and two Illinois common law claims against their former employer Defendant ZLB Behring LLC ("ZLB Behring"). Before the Court is ZLB Behring's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and ZLB Behring's Motion to Strike Plaintiffs' Request for Front Pay. For the following reasons, the Court grants in part and denies in part ZLB Behring's motion to dismiss. Furthermore, the Court denies ZLB Behring's motion to strike without prejudice.

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint, not the complaint's factual sufficiency or the merits of the case. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001); *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d

583, 586 (7th Cir. 1989).  The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)).  The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff.  *Centers*, 398 F.3d at 933.

Under the federal notice pleading standards, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing Fed.R.Civ. P. 8(a)(2)).  The short and plain statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.* (quoting *Conley v. Gibson,* 355 U.S. at 47).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Id.*

## BACKGROUND

ZLB Behring operates a manufacturing plant in Kankakee, Illinois, where it employed Plaintiffs until May 2004.  (R. 27-2; Am. Compl. ¶ 8.)  ZLB Behring's employees included both hourly employees ("Union Plaintiffs"), who were members of Local 498 C of the International Chemical Workers Union Council ("Local 498 C") and worked under a collective bargaining agreement ("CBA"), and salaried employees ("Non-Union Plaintiffs").  (*Id.* ¶¶ 9, 10.)  The Union Plaintiffs, Non-Union Plaintiffs, and other employees participated in the Armour Pharmaceutical Company Pension Plan, also known as the Aventis Behring, LLC Pension Plan ("Pension Plan").  (*Id.* ¶¶ 11, 12.)

2

By May 2004, Plaintiffs had earned, and were continuing to earn, service credit under the Pension Plan. (*Id.* ¶ 13.) Plaintiffs allege, however, that ZLB Behring wanted to stop incurring financial obligations under the Pension Plan and took several steps to achieve that end. (*Id.* ¶¶ 15-33.) First, ZLB Behring announced the layoff of Plaintiffs and approximately 480 other employees who had earned service credit and participated in the Pension Plan. (*Id.* ¶ 18.) Second, ZLB Behring officials told the affected employees that the downsize was permanent, more layoffs were coming, and the employees should accept a severance package and move on with their lives. (*Id.* ¶ 19.) At the time of these statements, however, Plaintiffs allege that ZLB Behring knew that the downsize would not be permanent. (*Id.* ¶¶ 20, 24.) Relying on the officials' allegedly false statements, Plaintiffs and other affected employees accepted the severance package, which offered severance pay in exchange for resignations and releases of all contractual and legal claims against ZLB Behring. (*Id.* ¶¶ 22, 23.)

Next, after the departure of Plaintiffs and the other affected employees, Plaintiffs allege that ZLB Behring exploited its strengthened position to negotiate a new collective bargaining agreement with Local 498 C, wherein future union employees would receive reduced wages and benefits. (*Id.* ¶¶ 24-28.) ZLB Behring also eliminated the right of non-union employees to continue earning service credit under the old Pension Plan. (*Id.* ¶ 29.) Finally, Plaintiffs allege that ZLB Behring increased operations at the Kankakee plant by hiring new employees and rehiring old employees at much lower wage rates and without the right to participate in the Pension Plan. (*Id.* ¶¶ 30-33.) At the time Plaintiffs filed their First Amended Complaint, ZLB Behring had rehired approximately thirty-five of the employees who had signed the releases and hired approximately twenty-five new employees. (*Id.* ¶ 32.)

Based on ZLB Behring's alleged scheme, Plaintiffs bring four counts against ZLB Behring. In Count I, Plaintiffs allege that ZLB Behring violated ERISA Section 510 by terminating Plaintiffs employment, which resulted in Plaintiffs losing all accrued benefits under the Pension Plan, and replacing Plaintiffs with newly hired or rehired employees who would not have similar rights under the plan. In Count II, Plaintiffs allege that ZLB Behring breached its fiduciary duty with respect to the Pension Plan in violation of ERISA Section 404 by failing to act solely in the interest of Plaintiff participants and their beneficiaries. In Counts III and IV, Plaintiffs allege that unilateral mistake and fraud, respectively, invalidate their resignations and release agreements under Illinois law.

## ANALYSIS

I. **Defendant's Arguments Affecting All Claims**

    A.     **Plaintiffs' Releases**

ZLB Behring's first argument is that Plaintiffs' releases of all contractual and legal claims against ZLB Behring "in and of themselves" compel dismissal of the First Amended Complaint. As Plaintiffs correctly assert, however, this inquiry requires factual determinations concerning the enforcement and validity of the releases that are not proper at this procedural posture. *Szabo,* 249 F.3d at 675-76 (motion to dismiss does not test factual sufficiency of complaint).

In addition, Plaintiffs argue that ZLB Behring fraudulently induced them to sign the releases. *See Havoco of Am., Ltd. v. Sumitomo Corp. of Am.,* 971 F.2d 1332, 1341 (7th Cir. 1992) ("release may be set aside if there is fraud in the inducement") (quoting *Phil Dressler & Assoc. v. Old Oak Brook Inv. Corp.,* 192 Ill.App.3d 577, 139 Ill.Dec. 629, 633, 548 N.E.2d 1343, 1347 (Ill.App.Ct. 1989)). Furthermore, Plaintiffs contend that they did not knowingly and voluntarily

waive their claims against ZLB Behring. *See Pierce v. Atchison Topeka & Santa Fe Ry. Co.,* 110 F.3d 431, 438 (7th Cir. 1997) (knowing and voluntary consent is a prerequisite to the effectiveness of waiver of claims).

Meanwhile, ZLB Behring invites the Court to construe the releases attached to its legal memorandum in support of its motion to dismiss. When reviewing a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits to the complaint, and the parties' supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). "[A]ny further pleadings would turn the motion into a 12(c) motion for judgment on the pleadings, or if additional evidence was relied upon or introduced, the motion would be converted into a 56(c) motion for summary judgment." *Id.* The Court declines to convert ZLB Behring's motion to dismiss into a motion for judgment on the pleadings or a summary judgment motion, and thus will not interpret the releases as ZLB Behring requests.

Because Plaintiffs are challenging the validity and enforcement of the releases and argue that the releases must be set aside based on fraud and that they did not knowingly and voluntarily waive their claims, the Court rejects ZLB Behring's argument that the releases compel dismissal of this lawsuit at this stage of the proceedings.

        **B.**        **Return of Consideration – Tender Back Doctrine**

Next, ZLB Behring contends that all of Plaintiffs' claims are barred as a matter of law because they have failed to allege that they tendered back their severance payments which ZLB Behring asserts were consideration for signing the releases. *See Fleming v. United States Postal Serv. AMF O'Hare,* 27 F.3d 259, 260-61 (7th Cir. 1994). In *Fleming*, the Seventh Circuit concluded that a Title VII plaintiff who agreed to settle her case, but later wanted to reinstate her

lawsuit by rescinding her settlement agreement, was barred from doing so because she did not "tender back" her settlement funds. *Id.* The *Fleming* Court explained, however, that when federal law limits a class of releases, such as under the ADEA, the common law prerequisite of tendering back consideration is not required. *Id.*; *see also Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427-28, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998).[1]

The *Fleming* Court also discussed other exceptions to the tender back doctrine, for instance, that when fraud is involved, a plaintiff need not tender back any consideration as a prerequisite to bringing a lawsuit. *Fleming,* 27 F.3d at 261(citing *Hogue v. S. Ry. Co.,* 390 U.S. 516, 517, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968)); *Cf. Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 570 n.2 (7th Cir. 1995) (due to defendant's misrepresentations, failure to return consideration did not ratify release). In *Hogue,* the Supreme Court also concluded that if the employees were awarded damages, any consideration paid would be deducted from those damages. *Id.* at 518. Indeed, "courts have interpreted the tender back doctrine flexibly, such that immediate tender is not always required." *Oubre,* 522 U.S. at 440 (Thomas, J., dissenting) (citing *Fleming,* 27 F.3d at 260).

Based on Plaintiffs' allegations of ZLB Behring's fraudulent conduct, Plaintiffs are not required to allege that they tendered back their severance pay to bring this lawsuit. Whether Plaintiffs must eventually tender back their severance pay is a question left for another day. *See Hogue,* 390 U.S. at 518.

---

[1] The parties do not cite any legal authority concerning ERISA and whether it displaces the common law tender back doctrine and the Court has found none. *See Deren v. Digital Equip. Corp.,* 61 F.3d 1, 2 (1st Cir. 1995) (whether ERISA displaces common law tender back requirement question of first impression which First Circuit left "for another day").

6

## II. Count II – ERISA Breach of Fiduciary Duty Claim

Next, ZLB Behring contends that Plaintiffs cannot establish their breach of fiduciary duty claim under ERISA, or any other claim based on reliance, "because there can be no allegations of detrimental reliance." More specifically, ZLB Behring contends that Plaintiffs' allegations concerning their resignations are untrue because ZLB Behring actually fired both Union and Non-Union Plaintiffs. The Court, however, must assume the truth of the facts as alleged in the First Amended Complaint, construe Plaintiffs' allegations liberally, and view them in the light most favorable to Plaintiffs. *See Centers*, 398 F.3d at 933. At this procedural posture, ZLB Behring's characterization of Plaintiffs' claims cannot defeat Plaintiffs' factual assertion that they resigned. *See Perry v. Sheahan,* 222 F.3d 309, 312 (7th Cir. 2000) (ambiguities in complaint interpreted in plaintiffs' favor, not defendants).

ZLB Behring also contends that the documents referenced in Plaintiffs' First Amended Complaint, including the "Effects Agreement" between ZLB Behring and the Union, show that Plaintiffs did not resign in reliance on any statements. ZLB Behring attaches this agreement to its legal memorandum in support of its motion to dismiss. Again, the Court declines to convert ZLB Behring's motion to dismiss into a motion for judgment on the pleadings or a summary judgment motion. Thus, the Court will not make any findings based on the "Effects Agreement" as ZLB Behring suggests.

Finally, ZLB Behring's attempt at developing its argument in the reply brief does not save the day because when a defendant fails to raise or develop an issue until reply, she waives the argument because the plaintiff has had no chance to respond. *See Kelso v. Bayer Corp.,* 398 F.3d 640, 643 (7th Cir. 2005) (citation omitted). Accordingly, ZLB Behring's "detrimental reliance" argument fails.

7

### III. Count III – State Law Unilateral Mistake Claim

In Count III of the First Amended Complaint, Plaintiffs allege that the Court should void the releases based on unilateral mistake. Specifically, Plaintiffs allege that they signed the releases that terminated their employment and waived their rights based on their mistaken belief that there was no reasonable possibility that they would ever return to work at the Kankakee plant. (R. 27-2, First Am. Compl. ¶¶ 60, 61.) On the other hand, ZLB Behring argues that under Illinois law, a release may not be voided by unilateral mistake. *See Rakowski v. Lucente,* 104 Ill.2d 317, 324, 84 Ill.Dec. 654, 472 N.E.2d 791 (1984). The Court agrees.

Under Illinois law, the "defenses which may be asserted to vitiate a release include fraud in the execution, fraud in the inducement, mutual mistake and mental incompetence." *Weisblatt v. Colky,* 265 Ill.App.3d 622, 627, 202 Ill.Dec. 462, 637 N.E.2d 1198 (Ill.App.Ct. 1994). In *Rakowski,* the Illinois Supreme Court explained that to void a release based on mistake, the mistake must be mutual, material to the transaction, and affect the substance of the transaction. *Id.* In other words, under Illinois law, unilateral mistake is not a ground for avoiding a contract. *Praxair, Inc. v. Hinshaw & Culbertson,* 235 F.3d 1028, 1034-35 (7th Cir. 2000). Here, Plaintiffs make no allegations of mutual mistake, but instead allege that they alone mistakenly believed that they would never return to employment at the Kankakee plant. As such, Plaintiffs' claim seeking rescission of the releases based on unilateral mistake must fail. The Court thus grants ZLB Behring's motion to dismiss Count III of the First Amended Complaint.

### IV. Count IV – ERISA Preemption of Common Law Fraud Claims

Finally, ZLB Behring contends that because the state law fraud claim in Count IV "relates to" the pension plan at issue in Counts I and II, ERISA preempts this state law claim.

*See* 29 U.S.C. § 1144(a) (ERISA's provisions "shall supersede any and all State laws so far as they may now or hereafter relate to any employee benefit plan"). The Court's inquiry, however, is not that simple.

The Seventh Circuit has identified three instances where the Supreme Court has allowed a claim to be so related to an employee benefit plan as to be preempted by ERISA: (1) where it mandates "employee benefit structures or their administration;" (2) where it "binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulating of an ERISA plan itself;" or (3) where it "provides an alternative enforcement mechanism to ERISA." *AFTRA Health Fund v. Biondi,* 303 F.3d 765, 775 (7th Cir. 2002) (citing and quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). With respect to the last instance of preemption, there are two categories of state laws that act as alternative enforcement mechanisms to ERISA: (1) where "the existence of a pension plan [was] a critical element of a state-law cause of action;" and (2) where a "state statute contains provisions that expressly refer to ERISA or ERISA plans." *Biondi,* 303 F.3d at 776 (quoting *De Buono v. NYSA-ILA Med. & Clinical Serv. Fund*, 520 U.S. 806, 815, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)); *see also Central States, Se. & Sw. Areas Pension Fund v. Denny,* 250 F.Supp.2d 948, 955 (N.D. Ill. 2003). With these standards in mind, the Court examines whether ERISA preempts Plaintiffs' common law fraud claim.

In Count IV, Plaintiffs specifically allege that ZLB Behring "intentionally gave out false and misleading information to the plaintiffs to induce them to give up their status as employees and omitted material information needed by plaintiffs to make an informed choice or decision as to employment." (R. 27-2, First Am. Compl. ¶ 68.) Plaintiffs also allege that ZLB Behring

9

concealed facts as to Plaintiffs' future employment and the status of the Kankakee plant regarding its future production. (*Id.* ¶ 69.) Plaintiffs' fraud claim makes no mention of the ERISA pension plan at issue in Counts I and II.

Because common law fraud is a traditional area of state regulation, ZLB Behring has "the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Biondi*, 303 F.3d at 775 (citing and quoting *De Buono,* 520 U.S. at 814). The *Biondi* Court thoroughly addressed the same issue as presented here, namely, whether ERISA preempts fraud under Illinois common law, including fraudulent misrepresentation and fraudulent concealment. *See id.* at 776-77.[2] As the *Biondi* Court explained, the plaintiff's common law fraud claim did not implicate any of ERISA's fundamental concerns, especially because the plan was merely the context in which the defendant committed fraudulent concealment. *Id.* at 779 ("a plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law"). The *Biondi* Court further concluded that the defendant had a separate and distinct duty under Illinois tort law not to make fraudulent misrepresentations in connection with an ERISA plan. *Id.* at 780.

ZLB Behring does not explain why the Court should not follow the *Biondi* Court's dictates, especially in light of the fact that in Count IV Plaintiffs are alleging fraudulent concealment and misrepresentation in the context of their employment status, not in the context of the ERISA pension plan. Further, ZLB Behring does not explain how the existence of the

---

[2] Neither Plaintiffs nor ZLB Behring cite or rely upon the Seventh Circuit's decision in *AFTRA Health Fund v. Biondi,* 303 F.3d 765 (7th Cir. 2002) in which the court not only addressed whether ERISA preempts fraudulent misrepresentation and concealment, but also explained in detail the Supreme Court's evolving interpretation of ERISA preemption. *See id.* at 773-75.

ERISA pension plan is a critical element of Plaintiffs' state law fraud claim, a required element under the *Biondi/De Buono* paradigm. *See id*. at 776. Accordingly, based on the facts as alleged by Plaintiffs, ZLB Behring has failed in its burden of overcoming the presumption that Congress did not intend for ERISA to supplant common law fraudulent misrepresentation and concealment claims.

In sum, the Court reminds ZLB Behring that federal courts only grant motions to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. Furthermore, under the federal notice pleading standards, federal courts rely on "the liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claim." *Swierkiewicz,* 534 U.S. at 512.

V. **Motion to Strike**

Also before the Court is ZLB Behring's Motion to Strike Plaintiffs' Request for Front Pay as alleged in Plaintiffs' ERISA claims, Counts I and II. Under their ERISA claims, Plaintiffs seek reinstatement to their former positions, or in the alternative, front pay, among other remedies. ZLB Behring contends that front pay is not an available remedy under ERISA, Section 502(a)(3), because it is not an equitable remedy. *See Mertens v. Hewitt Assoc.,* 508 U.S. 248, 255-56, 113 S.Ct. 2063, 124 L.E.2d 161 (1993) (relief under Section 502(a)(3) is limited to equitable remedies). Neither the Supreme Court nor the Seventh Circuit, however, has addressed the specific issue of whether front pay is an equitable remedy allowed under ERISA.

Meanwhile, ZLB Behring does not challenge Plaintiffs' request for reinstatement at this procedural posture and reinstatement is an equitable remedy. *See Lorillard v. Pons,* 434 U.S. 575, 583 n. 11, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("judgments compelling employment,

11

reinstatement or promotion are equitable"); *Cf. Hildebrandt v. Illinois Dep't of Natural Res.,* 347 F.3d 1014, 1031 (7th Cir. 2003) (Title VII plaintiff may recover equitable relief in form of reinstatement).  Because Plaintiffs' request for front pay is an alternative remedy, the Court will address whether front pay is an appropriate equitable alternative under ERISA if Plaintiffs can establish that ZLB Behring violated ERISA and reinstatement is not the appropriate remedy in the first instance.  Therefore, the Court denies ZLB Behring's motion to strike without prejudice.

## CONCLUSION

Based on these reasons, the Court grants ZLB Behring's Motion to Dismiss Plaintiffs' Complaint as to Count III.  The Court denies the remainder of ZLB Behring's Motion to Dismiss Plaintiffs' Complaint.  Further, the Court denies ZLB Behring's Motion to Strike Plaintiffs' Request for Front Pay without prejudice.

Dated:  January 27, 2006

                                          **ENTERED**

                                        **AMY J. ST. EVE**
                                        **United States District Judge**