IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA FLETCHER, JOAN LOVELL, and KATHY WISNIEWSKI, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 05 C 2695 ) ) |
| ZLB BEHRING LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Gloria Fletcher, Joan Lovell, and Kathy Wisniewski, on behalf of themselves and other unnamed Plaintiffs (collectively "Plaintiffs"), bring the present four-count class action First Amended Complaint. Plaintiffs allege two claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* and two Illinois common law claims against their former employer Defendant ZLB Behring LLC ("ZLB Behring"). Before the Court is Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(a). For the following reasons, the Court, in its discretion, denies Plaintiffs' motion.

## BACKGROUND

ZLB Behring operates a manufacturing plant in Kankakee, Illinois, where it employed Plaintiffs until May 2004. (R. 27-2; First Am. Compl. ¶ 8.) ZLB Behring's employees include both hourly employees, who are members of Local 498 C of the International Chemical Workers Union Council and worked under a collective bargaining agreement, and salaried employees, who were not members of the union. (*Id.* ¶¶ 9, 10.) The union and non-union employees

participated in the Armour Pharmaceutical Company Pension Plan, also known as the Aventis Behring, LLC Pension Plan ("Pension Plan"). (*Id.* ¶¶ 11, 12.)

By May 2004, Plaintiffs had earned, and were continuing to earn, service credit under the Pension Plan. (*Id.* ¶ 13.) Plaintiffs allege, however, that ZLB Behring wanted to stop incurring financial obligations under the Pension Plan and took several steps to achieve that end. (*Id.* ¶¶ 15-33.) First, ZLB Behring announced the layoff of Plaintiffs and other employees who had earned service credit and participated in the Pension Plan. (*Id.* ¶ 18.) Second, Plaintiffs allege that ZLB Behring officials told these employees that the downsize – also referred to as a "reduction in force" – was permanent, more layoffs were coming, and the employees should accept a severance package and "move on with their lives." (*Id.* ¶ 19.) Relying on the these statements, Plaintiffs and other employees accepted the severance package, which offered severance pay in exchange for resignations and releases of all contractual and legal claims against ZLB Behring. (*Id.* ¶¶ 22, 23.) After the departure of Plaintiffs and other affected employees, Plaintiffs allege that ZLB Behring increased operations at the Kankakee plant by hiring new employees and rehiring old employees at much lower wages and without the right to participate in the Pension Plan. (*Id.* ¶¶ 30-33.)

Based these allegations, Plaintiffs brought four counts against ZLB Behring, one of which the Court has previously dismissed. The remaining claims include: (1) Count I, in which Plaintiffs allege that ZLB Behring violated Section 510 of ERISA by terminating Plaintiffs employment that resulted in Plaintiffs losing their accrued benefits under the Pension Plan; (2) Count II, in which Plaintiffs allege that ZLB Behring breached its fiduciary duty with respect to the Pension Plan in violation of Section 404 of ERISA; and (3) Count IV, in which Plaintiffs allege common law fraud. In addition to monetary relief, Plaintiffs seek reinstatement of eligible

class members to jobs which have been or will be restored by ZLB Behring at the Kankakee plant. (*Id.* ¶¶ 52, 58, 71.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (class must satisfy requirements of numerosity, commonality, typicality, and representativeness). Failure to meet any of these Rule 23(a) requirements precludes class certification. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993); *see also General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.").

A party seeking class certification must also show that the proposed class satisfies one of the requirements set forth in Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In this case, Plaintiffs request certification of the proposed classes pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615-16. Under Rule 23(b)(3), members of a certified class may opt out and pursue their claims

individually. *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763 (7th Cir. 2003).

The party seeking class certification has the burden of establishing that certification is proper. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Rather, in deciding whether to certify a class, the court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. Finally, district courts have broad discretion in determining motions for class certification. *Retired Chicago Police*, 7 F.3d at 596; *see also Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979) (Rule 23 vests district courts with broad power and discretion).

## ANALYSIS

### I. Proposed Classes

Plaintiffs seek to certify two classes, each in turn are divided between union and non-union workers:

> (1) the first class consists of the more than 200 persons currently entitled to damages or restitution as well as reinstatement as employees at Defendant's Kankakee, Illinois plant because such persons would have been entitled to employment at the plant with the contractual and pension rights which they were induced to release in May 2004;
>
> (2) a second class consisting of more than 50 class members currently entitled to a rescission of their resignations and releases and to reinstatement as employees if in the future the defendant employer restores any additional positions at the plant.

(R. 71-1, Pls.' Mot. for Class Cert., at 2.)

First, ZLB Behring argues that because these classes – as defined – require a threshold liability determination before the members of each class can be identified, the proposed class

definitions are deficient under Rule 23. ZLB Behring also argues that Plaintiffs have failed to establish the Rule 23(a) requirements of numerosity, typicality, and adequacy.[1] Finally, ZLB Behring asserts that Plaintiffs have failed to show that their claims are suitable for class treatment under Rule 23(b)(3). The Court first addresses the requirements under Rule 23(b)(3) because it is dispositive. For the sake of completeness, however, the Court will also address ZLB Behring's arguments concerning the class definitions and the Rule 23(a) factors.

## II. Predominance & Superiority under Rule 23(b)(3)

Under Rule 23(b)(3), the Court must determine whether: (1) the questions of fact or law common to the class members predominate over questions affecting only the individual class members; and (2) a class action is superior to other available methods of adjudicating the plaintiffs' claims. *Szabo,* 249 F.3d at 676.

### A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623 (predominance requirement more demanding than the commonality requirement under Rule 23(a)(2)). Under the predominance requirement, there must be an essential common factual link between the class members and defendants under which the law requires a remedy. *Smith v. Nike Retail Servs., Inc.,* 234 F.R.D. 648, 666 (N.D. Ill. 2006) (citation and quotation omitted). The existence of factual or legal differences within a class does not foreclose a plaintiff from establishing predominance. *Id.*; *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill.

---

[1] In its response brief, ZLB Behring offers no argument concerning the Rule 23(a)(2) requirement of commonality "because it is clear that plaintiffs cannot show Rule 23(a) typicality or Rule 23(b)(3) predominance and superiority." (R. 76-1, Def.'s Resp. Mem., at 12 n.7.)

2003) ("Although the common issues must predominate the case, it is not necessary that the plaintiff show them to be exclusive."). When determining if plaintiffs have met the predominance requirement, district courts focus on questions of liability, not damages. *Radamanovich,* 216 F.R.D. at 435. In doing so, courts may look beyond the pleadings and determine whether the parties' claims are subject to proof by common evidence. *Id.*; *see also General Tel. Co. of Southwest,* 457 U.S. at 161 (courts may "probe behind the pleadings before coming to rest on the certification question"). If the liability issues are not subject to class-wide proof – but instead would require individual and fact intensive determinations – the class' common issues do not predominate. *Radamanovich,* 216 F.R.D. at 435-36 (citation omitted). To determine whether the liability issues are subject to class-wide proof, the Court considers such factors as the elements of Plaintiffs' claims, the proof necessary for those elements, and the manageability of trial on these issues. *Id.* at 435.

### 1. Count IV – Fraud Allegations

The Court first turns to Plaintiffs' fraud allegations in Count IV of the First Amended Complaint. Specifically, Plaintiffs allege:

> By the acts set forth above and in violation of its duty of trust and confidence to each plaintiff ZLB Behring engaged in actual and constructive fraud toward each plaintiff in that ZLB Behring lied and misrepresented and concealed the facts as to the likelihood of plaintiffs' future employment and falsely insisted that ZLB Behring would not resume production at the Kankakee plant in order to induce plaintiffs to give up their rights as employees.

(R. 27-2, First Am. Compl. ¶ 69.)

There are several individual issues that defeat the predominance requirement concerning Plaintiffs' fraud allegations. First, Plaintiffs' fraud claims turn on what ZLB Behring communicated to each putative class member, specifically how ZLB Behring officials told the

6

affected employees that the reduction in force was permanent, more layoffs were coming, and that the employees should accept the severance package. (*See id.* ¶ 19.) For instance, ZLB Behring sets forth deposition testimony of the named Plaintiffs who testified that they were not at every meeting in which management discussed the reduction in force and had no idea concerning what information other employees received about the lay offs. (R. 76-1, Def.'s Resp., Ex. A, Fletcher Dep. at 130-31; Ex. B, Lovell Dep. at 165-67; Ex. C, Wisniewski Dep. at 155-58, 163.)

Further, proof concerning the individual class member's reliance on these various statements would also be individual and fact intensive. *See Blair v. Supportkids, Inc.,* No. 02 C 0632, 2003 WL 1908031, at *5 (N.D. Ill. Apr. 18, 2003). As the Court explained in *Blair*, a similar lawsuit where the plaintiffs alleged fraud, "[s]uch individual issues of causation, reliance and damages plague class actions brought for fraud, and the courts frequently deny class certification in such cases because those issues generally predominate over any alleged common issues of fact or law." *Id.* The Court's conclusion is supported by Seventh Circuit case law. "Because the complaints alleged fraud, which is plaintiff-specific, issues common to all the class members were not likely to predominate over issues peculiar to specific members." *Nagel v. ADM Investor Serv., Inc.*, 217 F.3d 436, 443 (7th Cir. 2000). Accordingly, proof of Plaintiffs' fraud allegations do not meet the predominance requirements under Rule 23(b)(3).

       2.   **Count I – Section 510 Claim**

Next, the Court turns to Count I of the First Amended Complaint in which Plaintiffs allege that ZLB Behring violated Section 510 of ERISA by terminating Plaintiffs' employment resulting in Plaintiffs losing their accrued benefits under the Pension Plan. "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a

pension from vesting." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). "The loss of benefits to an employee as a result of an employer's action is not, by itself, sufficient to prove a violation of § 510," instead, the "employer must have the specific intent to deprive an employee of his plan rights." *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 796 (7th Cir. 2005). Accordingly, Plaintiffs may recover under Section 510 if they can establish that ZLB Behring terminated them or forced them to retire with the specific intent to interfere with their ERISA Plan benefits. *Id.* (citing *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998)). Put another way, Plaintiffs "must ultimately show that a desire to frustrate attainment or enjoyment of benefit rights contributed toward the employer's decision." *Isbell*, 418 F.3d at 796 (quoting *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994)).

Here, ZLB Behring sets forth evidence that nineteen different managers evaluated the non-union employees when selecting employees for the reduction in force. (R. 76-1, Ex. M. Powell Decl. ¶ 21.) These managers evaluated the non-union employees based on education, relevant experience, recent performance, and technical skills, among other factors. (*Id.* ¶ 21; Lovell Dep. at 49.) Thus, the proof concerning ZLB Behring's reasons for laying off certain non-union employees – including whether ZLB Behring had the specific intent to interfere with Plaintiffs' ERISA benefits – would involve individual and fact intensive determinations. *See Jones v. GPU, Inc.*, 234 F.R.D. 82, 92 (E.D. Pa. 2005) ("That different employment decisions were made in different ways and by different persons on different levels threatens the cohesiveness of a proposed class.").

As far as the union employees are concerned, there is evidence in the record that ZLB Behring selected union members for the reduction in force based solely on their seniority.

(Wisniewski Dep. at 48; Powell Decl. ¶ 18.) In fact, named Plaintiff Wisniewski testified at her deposition that ZLB Behring selected her for the reduction in force because of her lack of seniority with the company. (Wisniewski Dep. at 61.) Specifically, when asked whether ZLB Behring picked her for the layoff based on her pension benefits, Wisniewski responded that she was picked for the layoff because of her seniority. (*Id.* at 136.) Thus, whether Wisniewski, as a union member, has a claim under Section 510 of ERISA is in question. *See Isbell,* 418 F.3d at 796 (plaintiff may recover under Section 510 if employer terminated her with specific intent to interfere with ERISA benefits). In any event, if ZLB Behring had reasons other than seniority for the union employee layoffs, proof that these decisions were intended to deprive the employees of their ERISA rights would be individualized and particular to each union plaintiff. Therefore, Plaintiffs' allegations under Section 510 of ERISA are not subject to class-wide proof. In sum, Plaintiffs' common issues as to their Section 510 claim do not predominate. *See Radamanovich,* 216 F.R.D. at 435-36.

### 3. Count II – Section 404 Claim

Finally, ZLB Behring argues that Plaintiffs' breach of fiduciary duty claim pursuant to Section 404 of ERISA turns on what ZLB Behring management told each individual plaintiff. The Court agrees. Under Section 404, a trustee or other fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." *Vallone v. CNA Fin. Corp.,* 375 F.3d 623, 640 (7th Cir. 2004) (citing 29 U.S.C. § 1104(a)(1)). "In interpreting this statute, the Supreme Court has held that an employer breaches its fiduciary obligation by lying to employees in order to induce them to surrender their benefits." *Id.* (citing *Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). A breach of fiduciary duty exists if plan fiduciaries "mislead plan participants or misrepresent the terms or

administration of a plan." *Vallone,* 375 F.3d at 640 (citation omitted). To determine if a fiduciary has breached its duty, courts examine the whole picture, namely, the fiduciary's communications within the total mix of information available to the plaintiffs. *In re Sears Retiree Group Life Ins. Litig.,* 198 F.R.D. 487, 490 (N.D. Ill. 2000) (denying class certification where "total mix" of information received by class members demonstrated too much variation among class).

Although there were written communications concerning ZLB Behring's reduction in force, many of the communications to the individual employees were also verbal. Evidence in the record indicates that these verbal communications varied and included one-on-one meetings with the individual employees. (*See* Powell Decl. ¶¶ 14, 15.) Thus, Plaintiffs' argument that "all class members were told precisely the same thing" is not supported by the record. Further, the gravamen of Plaintiffs' breach of fiduciary duty claim is that ZLB Behring "intentionally gave out false and misleading information" to "induce[] plaintiffs to resign and give up their status as active participants in the Pension Plan." (First Am. Compl. ¶¶ 55, 56.) Under these allegations, proof of the circumstances surrounding each plaintiff's inducement to resign would be individualized, especially in the context of the "total mix" of information available to each plaintiff. *See In re Sears Retiree Group Life Ins. Litig.*, 198 F.R.D. at 490.

In a factually similar matter involving insurance agents' (as employees) breach of fiduciary duty claim under ERISA Section 404, the Seventh Circuit affirmed the district court's denial of class certification based on Rule 23(b)(3) because "everything depends on what was said or sent to each agent personally, and different benefits advisers said or wrote different things to different agents." *Frahm v. Equitable Life Assurance Soc'y*, 137 F.3d 955, 957 (7th Cir. 1998). Accordingly, Plaintiffs have failed to demonstrate that their breach of fiduciary duty

claim is susceptible to class-wide proof, and thus have not established the predominance requirement under Rule 23(b)(3).

    B.  **Superiority**

Next, the Court must determine whether a class action is superior to other available methods for the adjudication of Plaintiffs' claims. *See Szabo,* 249 F.3d at 676. Plaintiffs' entire argument in support of this factor includes:

> As is discussed throughout this memorandum, common issues predominate over any individual issues in this case. Since all potential class members experienced the same wrong at the same time and in the same way ate [sic] the hands of ZLB, the only way for the interests of justice and the interests of judicial economy to be served in this case is for this litigation to proceed as a class action.

(R. 83-1, Pls.' Reply Brief, at 21.)

Plaintiffs' bare-boned argument is not persuasive because questions of liability are not susceptible to class-wide proof. Instead, resolution of the proposed class members' claims would require multiple findings of liability, causation, and damages. As the *Szabo* decision instructs, courts must consider the difficulties encountered in managing a class action when making its "superiority" determination. *Id.* at 676. Here, class certification would not be a superior method of adjudicating Plaintiffs' claims because resolution of each member's claims would entail sifting through a significant amount of individualized facts and allegations. *See, e.g., Radamanovich,* 216 F.R.D. at 439 ("individual liability determinations would render this case totally unmanageable as a class action.").

Moreover, Plaintiffs seek monetary relief and reinstatement to their jobs at ZLB Behring's Kankakee plant. (First Am. Compl. ¶¶ 52, 58, 71.) As the *Frahm* court instructed, "[i]ndividual rather than class litigation is the best way to resolve person-specific contentions when the stakes are large enough to justify individual suits." *Id.* As such, Plaintiffs have failed

11

in their burden of demonstrating that a class action would be superior to individual lawsuits. For the sake of completeness, the Court now turns to ZLB Behring's arguments concerning the class definitions and Rule 23(a) factors of numerosity, typicality, and adequate representation.

### III. Class Definitions

ZLB Behring also contends that because the classes – as defined – require a threshold finding of liability before the members of each class can be identified, the two proposed class definitions are deficient. Although there is no explicit language in Rule 23 regarding this requirement, "many courts have held that there is a 'definiteness' requirement implied in Rule 23(a)." *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977). "[W]hether the description of a class is sufficiently definite to permit ascertainment of the class members must, of necessity, be determined on a case-by-case basis." *Id.* A sufficiently definite class exists if the court can ascertain the class members by reference to objective criteria. *Wallace v. Chicago Housing Auth.,* 224 F.R.D. 420, 425 (N.D. Ill. 2004). Because "the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear definition of what groups or individuals are members of the class." *Alliance to End Repression,* 565 F.2d at 977 n.6.

With these principles in mind, courts in this circuit and district have concluded that class definitions that require a threshold finding of liability are inadequate under Rule 23(a). *See, e.g., Alexander v. Q.T.S. Corp.*, No. 98 C 3234, 1999 WL 573358, at *4 (N.D. Ill. July 30, 1999) ("Plaintiffs' class definition inadequate in that it requires a finding of liability and the calculation of individual damages before class membership can be ascertained."); *see also Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D. Ind. 1997) (because class definition would require court to conduct individual inquiries into each potential class member's actions, plaintiff failed

12

to meet requirements under Rule 23(a)); *see also Ostler v. Level 3 Commc'ns, Inc.*, No. 00 C 0718, 2002 WL 31040337, at *2 (S.D. Ind. Aug. 27, 2002) ("Where such a determination on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class is unmanageable virtually by definition.").

Here, the first class definition states: "the first class consists of the more than ***200 persons currently entitled to damages or restitution as well as reinstatement as employees*** at Defendant's Kankakee, Illinois plant because such persons would have been entitled to employment at the plant with the contractual and pension rights which they were induced to release in May 2004." (*See* Pls.' Mot. for Class Cert., at 2.) (emphasis added). Based on this definition, a threshold inquiry of who is entitled to relief under the ERISA and fraud claims must first be determined to ascertain the putative class members. As such, the class members cannot be ascertained solely by objective criteria as required. *See Wallace,* 224 F.R.D. at 425.

The second class definition fares no better. It specifically states: "a second class consisting of more than ***50 class members currently entitled to a rescission of their resignations and releases and to reinstatement as employees*** if in the future the defendant employer restores any additional positions at the plant. (*See* Pls.' Mot. for Class Cert., at 2.) (emphasis added). Again, liability determinations would be required before the class could be defined. Therefore, the class definitions' lack of definiteness serves as another basis for the Court's denial of Plaintiffs' Motion for Class Certification.

## IV.     Factors Under Rule 23(a)

### A.     Numerosity

To satisfy the numerosity requirement, Plaintiffs must show that the number of members in the proposed classes is so large that joinder would be impracticable. *See* Fed.R.Civ.P.

23(a)(1); *see also Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 645 (N.D. Ill. 2006). Although there is no bright-line test for numerosity, a class of at least forty members is generally sufficient to satisfy the numerosity requirement. *See Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006). When determining numerosity, district courts may rely on reasonable inferences and common sense assumptions. *Jenkins v. Mercantile Mortgage Co.*, 231 F.Supp.2d 737, 744 (N.D. Ill. 2002); *see Fournigault,* 234 F.R.D. at 645 (exact number of class members not required as long as plaintiffs make good faith estimate).

Here, ZLB Behring argues that Plaintiffs have not established numerosity because there are only 49 people who would fall under the first class, namely, former ZLB Behring employees who were re-hired after the reduction in force. Plaintiffs, on the other hand, contend that the first class consists of the more than 200 persons. Meanwhile, ZLB Behring does not discuss the second class, which Plaintiffs assert consists of more than 50 members. In any event, regardless of whether the first class is 49 or 200, courts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement. *See Cavin,* 236 F.R.D. at 392 (citing *Swanson v. American Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002); *Chandler v. S.W. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995).

The Court's inquiry does not end here because ZLB Behring argues that due to the lack of geographic diversity amongst the class members, namely, that they all worked at the Kankakee manufacturing plant, joinder is not impracticable. *See Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 665 (N.D. Ill. 1996) (courts look to geographic diversity of class members, among other factors, when determining if joinder is impracticable). Plaintiffs do not address this argument, even though it is ZLB Behring's

14

strongest argument that joinder is not impracticable. Moreover, ZLB Behring also contends that the individual class members have the ability to institute individual lawsuits. *See Nagel,* 217 F.3d at 443 (factor that weighs against class certification is if class members have large enough stake to afford to litigate on their own). Plaintiffs also fail to address this argument, and as discussed above, it appears that Plaintiffs have the ability to institute individual lawsuits. Because ZLB Behring's arguments weigh against the number of putative class members set forth by Plaintiffs, the factors for and against a finding of numerosity are in equipoise.

B. **Typicality/Adequate Representation**

Under Rule 23(a)(3), "the typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police*, 7 F.3d at 596-97. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). As the Seventh Circuit instructs, the typicality requirement is an aspect of the adequate representation factor under Rule 23(a)(4) because if a named plaintiff's claim is atypical, it is unlikely that the named plaintiff will be an adequate representative of other class members and her incentive to press issues important to the other class members may be impaired. *See Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1157 (7th Cir. 1999). Because the factors under Rule 23(a)(3) and (a)(4) are related, the Court will examine these factors in tandem.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625. To establish the adequacy requirement, class representatives must show that (1) their claims are not

15

antagonistic or in conflict with those of the proposed class; (2) they have sufficient interest in the outcome of the case; and (3) experienced, competent counsel represents them.[2] *See Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992); *Cavin,* 236 F.R.D. at 392-93.

First, as discussed above, whether Plaintiff Wisniewski has a claim under ERISA Section 510 is in question because she testified that ZLB Behring selected her for the reduction in force based solely on her lack of seniority with the company. *See Isbell,* 418 F.3d at 796 (plaintiff may recover under Section 510 if employer terminated her with specific intent to interfere with her ERISA benefits). Therefore, whether Wisniewski's claim is typical of the other class members or whether she is an adequate representative of other union plaintiffs concerning the Section 510 claim is in doubt. *See Robinson,* 167 F.3d at 1157 (class representative's weak claim is independent reason to doubt adequacy of representation). As the Seventh Circuit warns, if a claim is a "clear loser" at the time a plaintiff seeks to be made class representative, then

---

[2] Under the third element of the adequacy requirement, Plaintiffs must demonstrate that they are represented by experienced and competent counsel. *See Rosario,* 963 F.2d at 1018. The Court notes that Plaintiffs' counsel did not file a memorandum of law in support of Plaintiffs' Motion for Class Certification. Instead, counsel filed a cursory five page motion that cited some controlling legal authority with scant legal analysis. Thereafter, ZLB Behring moved to strike Plaintiffs' reply brief or, in the alternative, for leave to file a sur-reply based on Plaintiffs' new arguments raised for the first time in their reply brief. The Court granted ZLB Behring's motion to file a sur-reply, but denied its motion to strike. Otherwise, Plaintiffs' arguments made for the first time in reply – which constituted the vast majority of Plaintiffs' arguments – would have been waived. *See Kelso v. Bayer Corp.,* 398 F.3d 640, 643 (7th Cir. 2005). Nonetheless, the Court declines to make an adequacy of counsel determination in light of the Court's conclusion that Plaintiffs have failed to establish predominance and superiority under Rule 23(b)(3). *See Amchem,* 521 U.S. at 626 n.20.

approving her as a class representative may hurt the other class members due to issues of res judicata. *Id.* at 1157-58.[3]

Next, ZLB Behring argues that the named Plaintiffs are inadequate representatives because their claims have no merit. Although legal inquiries may be necessary to ensure that the plaintiffs have satisfied the class certification requirements under Rule 23, *see Szabo*, 249 F.3d at 676, courts should not make specific merits determinations in deciding class certifications. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); *see also Nike Retail Servs., Inc.,* 234 F.R.D. at 659 (courts must walk fine line between preliminary inquiry into merits and making a final merits decision). The Court declines to make a merits determination as to all three named Plaintiffs' separate claims, as ZLB Behring suggests, especially because Plaintiffs have failed to demonstrate predominance and superiority under Rule 23(b)(3).

In sum, under Rule 23(a)(3) and (a)(4), named Plaintiff Wisniewski's adequacy as a class representative and the typicality of her Section 510 ERISA claim are clearly in dispute. Otherwise, the named Plaintiffs' claims arise from the same alleged course of conduct giving rise to the other class members' claims and the claims are based on the same legal theories. *See De La Fuente*, 713 F.2d at 232; *Nike Retail Servs.,* 234 F.R.D. at 665 (typicality not undermined by individualized differences among named plaintiffs). Therefore, Plaintiffs' claims satisfy the

---

[3] ZLB Behring's only argument concerning the typicality of non-union Plaintiffs Fletcher's and Lovell's claims is that because an individual analysis of what was verbally communicated to each plaintiff is necessary, the named Plaintiffs' claims are not typical of the proposed classes' claims. This argument was more properly addressed in the predominance analysis of this order. *See supra* II.A.

typicality requirement under Rule 23(a)(3). *See Hyderi v. Washington Mut. Bank,* 235 F.R.D. 390, 396 (N.D. Ill. 2006).

Finally, except for Wisniewski's claim under Section 510 under ERISA, Plaintiffs have established that they are adequate representatives because their claims are consistent with the proposed class' claims and there are no obvious conflict problems. *See Hyderi,* 234 F.R.D. at 396. Nevertheless, because Plaintiffs have failed to establish the predominance and superiority requirement under Rule 23(b)(3), the Court denies Plaintiffs' Motion for Class Certification.

## CONCLUSION

For these reasons, the Court denies Plaintiffs' Motion For Class Certification pursuant to Federal Rule of Civil Procedure 23.

Dated: October 23, 2006

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Judge**