IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA FLETCHER, JOAN LOVELL, and KATHY WISNIEWSKI, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 05 C 2695 ) |
| ZLB BEHRING, LLC, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiffs Gloria Fletcher, Joan Lovell, and Kathy Wisniewski brought the present First Amended Complaint alleging two claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Counts I and II) and two common law claims (Counts III and IV) against their former employer Defendant ZLB Behring, LLC ("ZLB Behring"). The Court previously dismissed Plaintiffs' common law unilateral mistake claim as alleged in Count III. Before the Court is ZLB Behring's Motion for Summary Judgment on the remaining counts of the First Amended Complaint and on its breach of contract claim as alleged in its Counterclaim pursuant to Federal Rule of Civil Procedure 56(c). Also before the Court is Plaintiffs' Motion for Partial Summary Judgment on Count II, Count IV, and ZLB Behring's Counterclaim. For the following reasons, the Court grants ZLB Behring's summary judgment motion as to Counts I and II of the First Amended Complaint and denies Plaintiffs' motion for summary judgment as to Count II. Because the Court dismisses Plaintiffs' claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining common law fraud and breach of contract claims. *See* 28 U.S.C. § 1367(c)(3).

# BACKGROUND

I.  **Northern District of Illinois Local Rule 56.1 Statements**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). The purpose of Local Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Solaia Tech. LLC v. Arvinmeritor, Inc.*, 361 F.Supp.2d 797, 826-27 (N.D. Ill. 2005).

The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Moreover, the Court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Id.* at 529. A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Further, the Court may disregard statements and responses that do not cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). With these principles in mind, the Court turns to the relevant facts of this case.

II.  **Relevant Facts**

    A.  **Introduction**

Beginning in 2000 there was a worldwide oversupply in the plasma-derived products

industry. (R. 134-1, Pls.' Rule 56.1 Stmt. Facts, ¶ 1.) The worldwide oversupply drove CSL, Ltd.'s ("CSL") acquisition of Aventis Behring in which CSL merged Aventis Behring into an existing CSL company to form Defendant ZLB Behring. (*Id.* ¶ 2; R. 126-1, Def.'s Rule 56.1 Stmt. Facts ¶ 2.) ZLB Behring operates a manufacturing plant in Kankakee, Illinois, where it employed Plaintiffs until May 2004. (R. 27-2; First Am. Compl. ¶ 8.) The International Chemical Workers Union Council ("Union") represents the hourly employees in the manufacturing operations and skilled support areas at the Kankakee plant. (Def.'s Stmt. Facts ¶ 3.) A series of Collective Bargaining Agreements ("CBA") between the Union and ZLB Behring or one of its predecessors governs the terms and conditions of the bargaining unit members' employment. (*Id.*; R. 157-3, Pl.'s Resp. Stmt. Facts ¶ 3.) On April 1, 2004, approximately 467 employees at the Kankakee plant were members of the collective bargaining unit. (Def.'s Stmt. Facts ¶ 4.) The remaining employees at the Kankakee plant, approximately 509 employees, were not members of the collective bargaining unit. (*Id.*)

### B. Reduction-in-Force

The worldwide oversupply of plasma-derived products was one of the reasons that ZLB Behring carried out its May 2004 Reduction-in-Force (RIF) that is at issue in this lawsuit. (Pls.' Stmt. Facts ¶ 2; R. 155-1 Def.'s Resp. Stmt. Facts ¶ 2.) More specifically, as of April 1, 2004, ZLB Behring produced various products derived from human blood or plasma. (Pls.' Stmt Facts ¶ 8; Def.'s Stmt. Facts ¶ 6.) Thereafter, CSL decided to make the Kankakee facility a center for producing plasma protein paste intermediates. (Def.'s Stmt. Facts ¶ 8.) Thus, instead of making, packaging, and shipping finished products, the Kankakee facility would focus on processing the raw material to a certain point and then ship that intermediate product to another plant for finishing. (*Id.*) CSL's plan also called for a reduction of plasma input. (*Id.* ¶ 9.) Based on these

3

changes, ZLB Behring's management at the Kankakee plant decided to implement the RIF. (*Id.* ¶ 10.)

### C. Selection for RIF & Severance Packages

In May 2004, ZLB Behring initiated its layoff of approximately 560 of its employees at the Kankakee plant. (*Id.* ¶ 15.) ZLB Behring selected Union represented employees for the layoff based solely on their seniority. (*Id.* ¶ 17.) ZLB Behring gave three options to the Union employees who were selected for the layoff: (1) they could elect to remain on layoff status with recall rights for 24 months under the CBA; (2) they could sign a release agreement and waive recall rights in exchange for a lump-sum severance payment; or (3) they could remain on layoff status for 60 days with the option – if not recalled within that time – to waive further recall rights and elect a lump sum severance payment. (*Id.*; Pls.' Stmt. Facts ¶ 29.)

For the non-union employees, the RIF process involved several steps. (Def.'s Stmt. Facts ¶ 19.) Initially, ZLB Behring management decided to eliminate certain positions altogether. (*Id.*) If ZLB Behring did not eliminate a position and there was only one employee performing that function, ZLB Behring retained that employee. (*Id.*) If there were multiple employees performing a function and the number of employees needed under the new business plan was lower than the number currently performing the function, ZLB Behring considered all the employees who held the position as candidates for retention. (*Id.*)

When considering candidates for retention, ZLB Behring management selected employees based on an evaluation of their education, relevant experience, recent performance, technical skills, and years of service. (*Id.* ¶ 20.) At the time of the RIF, ZLB Behring had a severance benefit plan for non-union employees. (*Id.* ¶ 21.) The plan provided severance pay based on years of service, salary band, and compensation. (*Id.*)

4

D.     **Individual Plaintiffs**

Plaintiff Gloria Fletcher was a salaried, non-union employee at ZLB Behring and was terminated as a result of the RIF. (*Id.* ¶ 38; Def.'s Tab 11, Powell Decl. ¶¶ 12, 22.)[1] When ZLB Behring terminated Fletcher's employment, it gave her the option of receiving additional severance benefits, such as job placement benefits. (*Id.* ¶ 41; Pls.' Stmt. Facts ¶ 28.) ZLB Behring conditioned the enhanced separation package upon her signing a release agreement. (Def.'s Stmt. Facts ¶ 41.) Fletcher signed the release and received four months' severance pay in the amount of approximately $15,000, before taxes. (*Id.* ¶¶ 42, 46.)

Plaintiff Joan Lovell was a salaried, non-union employee at ZLB Behring, who was also terminated as a result of the RIF. (*Id.* ¶ 59.) When ZLB Behring terminated Lovell's employment, it gave her the option of receiving additional severance benefits, including job placement benefits. (*Id.* ¶ 61; Pls.' Stmt. Facts ¶ 28.) ZLB Behring conditioned the separation package upon Lovell signing a release agreement. (*Id.*) Lovell signed the release and received approximately $17,000, before taxes. (*Id.* ¶ 62.)

Plaintiff Kathy Wisniewski was a member of the Union while employed at ZLB Behring. (*Id.* ¶ 78.) Pursuant to the RIF, ZLB Behring terminated Wisniewski's employment based on her lack of seniority. (*Id.* ¶ 79.) Wisniewski signed a release agreement in exchange for an enhanced severance package, which included extended medical coverage, among other benefits.

---

[1] Plaintiffs argue that under the best evidence rule pursuant to Federal Rule of Evidence 1002, ZLB Behring should have cited the individual Plaintiffs' deposition transcripts for statements concerning their work background instead of Maureen Powell's declaration. Because Powell's declaration is based on her-first hand knowledge as the Director of Human Resources for ZLB Behring and its predecessors, the Court rejects Plaintiffs' argument. (R. 128-1, Def.'s Tab 11, Powell Decl. ¶¶ 2-4.)

(*Id.* ¶ 80; R. 128-1, Tab 15, Union Release, at 2.) Pursuant to the severance package, Wisniewski received approximately $11,000, before taxes. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed.R.Civ.P. 56(e)).

## ANALYSIS

**I.    Count I – ERISA Section 510**

In Count I of the First Amended Complaint, Plaintiffs allege that ZLB Behring violated Section 510 of ERISA by terminating Plaintiffs' employment resulting in Plaintiffs losing their accrued benefits under the pension plan. *See* 29 U.S.C. § 1140. Plaintiffs, however, make no arguments in support of their Section 510 claims in their legal memorandum in response to ZLB Behring's summary judgment motion. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007)

(absence of any discussion in briefs amounts to abandonment of claim). Despite Plaintiffs' abandonment of their Section 510 claims, the Court addresses their claims for the sake of completeness.

A. **Legal Standard**

"By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). "The loss of benefits to an employee as a result of an employer's action is not, by itself, sufficient to prove a violation of § 510," instead, the "employer must have the specific intent to deprive an employee of his plan rights." *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 796 (7th Cir. 2005). "No violation will arise where the deprivation was simply the consequence of a decision that had the incidental effect of affecting an employee's benefits." *Id.*

Plaintiffs may recover under Section 510 if they can establish that ZLB Behring terminated their employment with the specific intent to interfere with their ERISA Plan benefits. *Id.* (citing *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998)). Put differently, Plaintiffs "must ultimately show that a desire to frustrate attainment or enjoyment of benefit rights contributed toward the employer's decision." *Id.* (quoting *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994)). Plaintiffs may establish a violation of Section 510 through either the direct or indirect method of proof. *Id.* Because Plaintiffs have not produced any direct evidence that ZLB Behring terminated their employment to deprive them of their pension benefits, the Court proceeds under the indirect method which is similar to *McDonnell Douglas* burden-shifting analysis. *See id.*

7

To establish a prima facie case under Section 510, Plaintiffs must show that: (1) they belonged to a protected class, namely, that they were participants or beneficiaries of an ERISA-governed plan; (2) they were qualified for their job positions; and (3) there is a basis for believing that ZLB Behring had the prohibited intent of depriving them of their ERISA benefits. *Id.* (citing *Grottkau v. Sky Climber, Inc.,* 79 F.3d 70, 73 (7th Cir. 1996)); *see also Bilow v. Much Shelist*, 277 F.3d 882, 892 (7th Cir. 2001) ("plaintiff must demonstrate that the employer had the ***specific intent*** to violate the statute and to interfere with an employee's ERISA rights.") (emphasis in original). Ultimately, a plaintiff can avoid summary judgment only if the materials before the district court allow for the conclusion that a desire to frustrate plaintiff's attainment of her ERISA benefits contributed toward the employer's decision. *Lindemann,* 141 F.3d at 295. Moreover, courts need not "determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate, nondiscriminatory reason for its action." *Id.* at 296.

### B. Wisniewski's Section 510 Claim

The undisputed evidence in the record reveals that ZLB Behring selected Union members for the RIF based solely on their seniority. In fact, when asked whether ZLB Behring picked her for the RIF based on her pension benefits, Wisniewski responded that she was picked for the layoff because of her lack of seniority. (Def.'s Stmt. Facts ¶ 93; Tab 3, Wisniewski Dep., at 136.) Wisniewski's admission is fatal to her Section 510 claim, and thus the Court grants Defendant's summary judgment motion as to Wisniewski's claim in Count I.

### C. Fletcher's and Lovell's Section 510 Claims

Furthermore, the non-union Plaintiffs have failed to set forth any evidence that ZLB Behring terminated their employment under circumstances that provide a basis for believing that

8

ZLB Behring intended to deprive them of their ERISA benefits. *See Isbell,* 418 F.3d at 796. Instead, Lovell testified that she believed office politics was the reason for her layoff. (Def.'s Stmt. Facts ¶ 74, Tab 2, Lovell Dep. at 48-49.) Although Fletcher did not make a similar statement, there is simply no evidence in the record linking Fletcher's ERISA benefits to the May 2004 RIF.

Thus, viewing the facts and all reasonable inferences in Plaintiffs' favor, they have failed to present any evidence creating a genuine issue of material fact that ZLB Behring discharged them under circumstances that provide a basis for believing that ZLB Behring intended to deprive them of their ERISA benefits. *See Isbell,* 418 F.3d at 796. In other words, the evidence before the Court does not raise a genuine issue of material fact that ZLB Behring had the desire to frustrate Plaintiffs' attainment of their ERISA benefits and that this desire contributed toward its decision to layoff Plaintiffs pursuant to the May 2004 RIF. *See Lindemann,* 141 F.3d at 295. Finally, ZLB Behring has advanced a legitimate, nondiscriminatory reason for the May 2004 RIF, including the worldwide oversupply of plasma-derived products, *see id.* at 296, as well as legitimate criteria for selecting Lovell and Fletcher for the RIF based on their education, relevant experience, performance, technical skills, and years of service. (*See* Pl.'s Stmt. Facts ¶ 2; Def.'s Stmt. Facts ¶ 20.) The Court thus grants ZLB Behring's summary judgment motion as to Count I of the First Amended Complaint.

## II.     Count II – ERISA Breach of Fiduciary Duty Claim

### A.     Legal Standard

Next, the Court turns to Plaintiffs' breach of fiduciary duty claim. Under ERISA Section 404, a trustee or other fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." *Vallone v. CNA Fin. Corp.,* 375 F.3d 623,

640 (7th Cir. 2004) (citing 29 U.S.C. § 1104(a)(1)).  If a fiduciary breaches his duty, he can be held personally liable to the ERISA plan for the losses to the plan resulting from his breach.  *See Jenkins v. Yager,* 444 F.3d 916, 924 (7th Cir. 2006); *see also Magin v. Monsanto Co.,* 420 F.3d 679, 687 (7th Cir. 2005) ("Recovery from such actions, however, must go to the plan as a whole, and not the individual beneficiary.").  "[T]he Supreme Court has held that an employer breaches its fiduciary obligation by lying to employees in order to induce them to surrender their benefits."  *Id.* (citing *Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)).  To establish a breach of fiduciary duty, a plaintiff must show that (1) the defendant is a plan fiduciary, (2) the defendant breached its fiduciary duties, and (3) the defendant's breach harmed the plaintiff.  *See Jenkins*, 444 F.3d at 924.

**B.**     **ERISA Plan Fiduciary**

In support of their breach of fiduciary duty claim, Plaintiffs rely on Kankakee Plant Manager Tim Moore's statement at an April 2004 meeting – at which both Union and non-union employees attended – that the job cuts involved in the RIF were expected to be permanent.  (Pls.' Stmt. Facts ¶ 18.)  Moore further advised ZLB Behring employees to accept the severance packages and to "move on with their lives."  (R. 165-1, Pls.' Stmt. Add'l Facts ¶ 8.)

Under the first element of a breach of fiduciary duty claim, Plaintiffs must show that Moore was a fiduciary as that term is defined by the statute and that Moore was acting in his capacity as a fiduciary at the time he made these statements.  *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 471-72 (7th Cir. 2007).  An individual is a fiduciary as defined by ERISA

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment

advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* at 472 (quoting 29 U.S.C. § 1002(21)(A)); *see also Beach v. Commonwealth Edison Co.,* 382 F.3d 656, 658 (7th Cir. 2004) ("The statute defines a 'fiduciary' as a person who exercises authority or discretion over the administration of a plan, but only when performing those functions.")

There is undisputed evidence in the record that Moore did not have discretionary authority to manage or control ZLB Behring's ERISA plans, that he did not provide investment advice concerning the plans, nor did he have any responsibility in the administration of ZLB Behring's ERISA plans. (Def.'s Stmt. Facts ¶ 25.)[2] Plaintiffs nonetheless argue that "[t]here is no question that when Mr. Moore spoke it was on ZLB's behalf." (R. 157-2, Pls.' Resp. Def.'s Summ. J., at 16.) Plaintiffs' argument is misplaced because it does not create a genuine issue of material fact that Moore was a fiduciary as defined by the statute and that Moore was acting in his capacity as a fiduciary at the time he informed Plaintiffs that the job cuts pursuant to the RIF were expected to be permanent. *See Carpenters Welfare Fund,* 474 F.3d at 472. Plaintiffs also maintain that Moore gave them advice by telling them to "move on with their lives." Moore's advice, however, has nothing to do with the statutory definition in which a fiduciary is someone who gives investment advice with respect an ERISA plan. *See* 29 U.S.C. § 1002(21)(A). As such, Plaintiffs have failed to set forth evidence creating a genuine issue of material fact that

---

[2] Plaintiffs' response to Defendant's Statement of Fact ¶ 25 is evasive, non-responsive, and does not meet the substance of the material facts asserted. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). As such, Plaintiffs have failed to rebut Defendant's Statement of Fact ¶ 25, and thus it is admitted as true. *See id.*

11

Moore was a fiduciary as defined by ERISA and that Moore was acting in his capacity as a fiduciary at the time he made statements about the permanency of the May 2004 layoffs. *See Chicago Dist. Council of Carpenters Welfare Fund,* 474 F.3d at 471-72; *see also Johnson v. Georgia-Pacific Corp.,* 19 F.3d 1184, 1188 (7th Cir. 1994) (closing plants or laying off workers not fiduciary acts) (citations omitted).

### C. ZLB Behring's Alleged Breach

Plaintiffs' breach fiduciary duty claim fails on other grounds. As discussed, Plaintiffs argue that ZLB Behring misrepresented that the job cuts pursuant to the May 2004 RIF would be permanent when in fact ZLB Behring has since hired some new employees at the Kankakee plant. As the Seventh Circuit instructs, however, a breach of fiduciary duty exists where plan fiduciaries "mislead plan participants or misrepresent the terms or administration of a plan." *Vallone,* 375 F.3d at 640 (citation omitted); *see also Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund,* 390 F.3d 1040, 1047 (7th Cir. 2004) (same). In other words, to establish a breach of fiduciary duty claim, the misrepresentations at issue must concern Plaintiffs' ERISA plan or benefits. *See Bowerman v. Wal-Mart Stores, Inc.,* 226 F.3d 574, 590 (7th Cir. 2000) ("not every error in communicating information regarding a plan will be found to violate a fiduciary's duty under ERISA"); *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund,* 128 F.3d 541, 546-47 (7th Cir. 1997) (plan fiduciary violates duty by misleading plan participants about operations of plan); *see also Beach,* 382 F.3d at 658 ("Duties under ERISA are plan-specific.").

Here, Plaintiffs fail to set forth any evidence that Moore, or anyone else at ZLB Behring, made misrepresentations or false statements about the relevant ERISA-governed plans. Instead, viewing the evidence and all reasonable inferences in Plaintiffs' favor, they have presented evidence that Moore may have misinformed them about the permanency of the layoffs. Without

more, Plaintiffs have failed to set forth evidence creating a genuine issue of material fact that ZLB Behring made misrepresentations about their ERISA-governed plans or benefits. *See Vallone,* 375 F.3d at 640; *see also Johnson*, 19 F.3d at 1188 (closing plants or laying off workers not fiduciary acts) (citations omitted). Therefore, Plaintiffs' breach of fiduciary duty claim fails and the Court grants Defendant's summary judgment motion as to Count II of the First Amended Complaint.

### III. Supplemental State Law Claims

Finally, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' common law fraud claim and ZLB Behring's common law breach of contract claim because the Court has dismissed Plaintiffs' claims over which the Court had original jurisdiction pursuant to 28 U.S.C. § 1331, namely, Plaintiffs' ERISA claims pursuant to 29 U.S.C. §§ 1104(a), 1140. *See Ross v. Board of Educ. of Twp. High Sch. Dist.* #211, 486 F.3d 279, 285 (7th Cir. 2007); 28 U.S.C. § 1367(c)(3). Moreover, the parties have not properly alleged diversity jurisdiction. *See* 28 U.S.C. § 1332. Because "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial," the Court dismisses this lawsuit in its entirety. *East-Miller v. Lake County Highway Dep't,* 421 F.3d 558, 564-65 (7th Cir. 2005) (quoting *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999)). Section 1367(d) tolls the statute of limitations for 30 days after the Court's dismissal of these supplemental claims, allowing the parties to re-file their breach of contract and fraud claims in state court without these claims being time-barred. *See Williams Elec. Games, Inc. v. Garrity,* 479 F.3d 904, 907 (7th Cir. 2007).

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment as to Counts I and II of Plaintiffs' First Amended Complaint and denies Plaintiffs' Motion for Partial Summary Judgment as to Count II. The Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law fraud claim in Count IV of the First Amended Complaint and Defendant's state law breach of contract claim in its Counterclaim, and thus dismisses these state law claims without prejudice.

Dated: July 12, 2007

            **ENTERED**

            _____
            **AMY J. ST. EVE**
            **United States District Judge**